CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED

11/16/2018

JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JUAN MARTINEZ RAMIREZ,<br><br><div align="right">*Defendant.*</div> | CASE NO. 3:18-cr-00026<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court upon Defendant Juan Martinez Ramirez's motion to dismiss the indictment. (Dkt. 18). The indictment contains one count, charging Ramirez with illegally reentering the United States in violation of 8 U.S.C. § 1326. (Dkt. 11). Ramirez argues that the indictment should be dismissed because the notice to appear initially issued to him failed to specify the time and place of the removal proceedings against him, as required by 8 U.S.C. § 1229(a)(1) and *Pereira v. Sessions*, 138 S.Ct. 2105 (2018). Ramirez advances two specific attacks on the indictment. First, Ramirez argues that without a valid notice to appear, subject matter jurisdiction never vested in the immigration court, rendering that court's deportation order a legal nullity. Second, Ramirez launches a collateral attack against his deportation order under 8 U.S.C. § 1326(d), arguing that his initial deportation proceedings lacked fundamental fairness.

Although conceding that the notice to appear issued to Ramirez was defective under § 1229(a)(1) and *Pereira*, the Government argues that the indictment should be upheld for two reasons. First, the Government asserts that federal regulations, not § 1229(a)(1) or *Pereira*, control when and how subject matter jurisdiction vests in an immigration court, and these regulations do not require that a notice to appear list the time and place of any removal proceeding. Second, the Government contends that Ramirez's collateral attack under § 1326(d)

fails because Ramirez cannot show that he exhausted administrative remedies, that he was deprived of an opportunity for judicial review, or that his deportation proceedings were fundamentally unfair.

The Government is correct that the immigration court had subject matter jurisdiction over Ramirez's deportation proceedings under the governing regulations. Moreover, Ramirez's collateral attack on the underlying deportation order fails because, although the initial notice to appear lacked the time, date, and place of the removal proceedings, Ramirez received subsequent notice of these details and attended his deportation hearing. Ramirez therefore cannot make the necessary showing under § 1326(d) that his deportation proceedings were fundamentally unfair. Accordingly, the motion to dismiss the indictment has been denied. (Dkt. 25).

## I. FACTS & KEY PRECEDENT

### A. Factual Background

On October 10, 2018, Juan Martinez Ramirez was indicted on one count of illegal reentry into the United States in violation of 8 U.S.C. § 1326. (Dkt. 11). Ramirez, allegedly a native of Mexico, was initially served in person with a notice to appear on December 31, 2013. (Dkt. 18-2). This notice to appear ordered Ramirez to appear on "a date to be set" and "at a time to be set" to "show why [he] should not be removed from the United States." (*Id*.). The notice nowhere specified the time or date when Ramirez should appear, or the place where Ramirez should appear. The Government avers that, while still in custody, Ramirez received notice in person on January 13, 2014 of the date, time, and place of his removal hearing. (Dkt. 23 at 3; Dkt. 23-1). On January 28, 2014, Ramirez attended his removal hearing, at which he was ordered deported. (Dkt. 18-1). The immigration court's removal order indicates that Ramirez waived his right to appeal the order and that Ramirez was personally served with a copy of the

order on January 28, 2014. (*Id.*). The Government avers that Ramirez was removed from the

United States on February 7, 2014, (dkt. 23 at 3), and that he later came to the attention of

federal immigration officials following two arrests in the Western District of Virginia in August

2018. (*Id.*). The illegal reentry charge at issue followed.

**B.** ***Pereira v. Sessions* (2018)**

In *Pereira v. Sessions*, 138 S.Ct. 2105 (2018), the Supreme Court considered whether

"notices to appear" in deportation proceedings that do not specify the time and place of removal

proceedings against a noncitizen qualify as "notices to appear" under 8 U.S.C. § 1229(a)(1) for

purposes of the "stop-time rule" under 8 U.S.C. § 1229b(d).[1] The Court held that such notices to

appear are not true "notices to appear" as defined by § 1229(a)(1). *Pereira*, 138 S.Ct. at 2113–

14. The Court's holding rested primarily on the plain text of § 1229(a)(1), which requires that a

"notice to appear" be given to noncitizens facing removal proceedings, and defines a "notice to

appear" as "written notice" specifying certain information, including the "time and place at

which the proceedings will be held." *Id.* The Court noted that "common sense compels the

conclusion" that if the "three words 'notice to appear' mean anything . . . they must mean that, at

a minimum, the Government has to provide noncitizens 'notice' of the information, *i.e.*, the

'time' and 'place,' that would enable them 'to appear' at the removal hearing." *Id.* at 2115. The

parties now dispute how *Pereira* applies in contexts beyond application of the stop-time rule,

namely in illegal reentry prosecutions where, as here, the underlying notice to appear provided to

---

[1]     Under § 1229b(d)—a statutory section not at issue here but important to understanding
*Pereira*'s holding—the Attorney General can cancel removal of non-permanent residents who
have at least ten years of continuous presence in the United States and permanent residents who
have at least seven years of continuous presence in the United States. Under the "stop-time"
rule, these periods end when the Government serves a "notice to appear" as defined by §
1229(a)(1). *See Pereira*, 138 S.Ct. at 2110.

the noncitizen and filed with the immigration court fails to specify the time and date of the removal proceedings.

## II.       STANDARD OF REVIEW

Criminal defendants may allege defects in indictments in pretrial motions, including "(i) joining two or more offenses in the same count (duplicity); (ii) charging the same offense in more than one count (multiplicity); (iii) lack of specificity; (iv) improper joinder; and (v) failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B).  An indictment must contain a "plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).  *See also United States v. Daniels*, 873 F.2d 272, 274 (4th Cir. 1992) ("An indictment must contain the elements of the offense charged, fairly inform a defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offense.").  A reviewing court "should regard all well pleaded facts as true when considering a motion to dismiss an indictment." *United States v. Dove*, 70 F.Supp.2d 634, 636 (W.D. Va. 1999).  A court should not dismiss an indictment on the basis of "facts that should" be "developed at trial." *United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012).  Rather, motions to dismiss indictments should generally be denied unless "the allegations therein, even if true, would not state an offense." *United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004).

Collateral attacks of deportation orders are authorized where, as here, those orders are necessary to establish an element of the charged illegal reentry offense.[2]  *See United States v.*

---

[2]       The elements of illegal reentry under 8 U.S.C. § 1326 are as follows: (1) the defendant "has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding"; and (2) the defendant thereafter "enters, attempts to enter, or is at any time found in the United States" without express advance consent from the Attorney General.  8 U.S.C. § 1326(a).  The Fourth Circuit has recognized that a valid "deportation order is an element of the offense of illegal reentry." *United States v. El Shami*, 434 F.3d 659, 663 (4th Cir. 2005).

*Mendoza-Lopez*, 481 U.S. 828, 837–38 (1987) (review of deportation proceeding must be "made available in any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense"). Under § 1326(d), a defendant mounting a collateral attack against an underlying deportation order must show (1) he "exhausted any administrative remedies that may have been available to seek relief against the order"; (2) the deportation proceedings "at which the order was issued improperly deprived" him of the "opportunity for judicial review; and (3) entry of the order was "fundamentally unfair." If a "defendant satisfies all three requirements, the illegal reentry charge must be dismissed as a matter of law." *United States v. El Shami,* 434 F.3d 659, 663 (4th Cir. 2005).

## III.   ANALYSIS

Ramirez advances two arguments in support of his motion to dismiss the indictment. First, he argues the indictment should be dismissed because subject matter jurisdiction never vested in the immigration court. Second, he contends the indictment should be dismissed under the factors set forth for a collateral attack on a deportation order in 8 U.S.C. § 1326(d). The Court has recently addressed these arguments in ruling on two motions to dismiss indictments in similar illegal reentry cases. *See United States v. Saravia-Chavez*, No. 3:18-cr-00016, Dkt. 39 (denying motion to dismiss indictment); *United States v. Ramos-Delcid*, No. 3:18-cr-00020, 2018 WL 5833081 (W.D. Va. Nov. 7, 2018) (dismissing indictment under § 1326(d)). Ramirez has "expressly incorporate[d] all of the arguments" made in briefing and at oral argument in those cases for consideration here. (Dkt. 18 at 2; Dkt. 24). We consider each of Ramirez's arguments below.

**A.      Immigration Court's Subject Matter Jurisdiction over Removal Proceeding**

Ramirez first argues that the indictment should be dismissed because the allegedly deficient notice to appear issued to him prevented subject matter jurisdiction from vesting in the immigration court.  Ramirez contends that a removal proceeding commences, and jurisdiction vests with the immigration court, only by the filing of a charging document such as a notice to appear, which *Pereira* and § 1229(a) establish must contain the time and place of the removal proceedings.  (Dkt. 18 at 1).  Ramirez argues that where a notice to appear fails to include the time and place of a removal hearing, the document does not qualify as a charging document so as to confer jurisdiction over an alien to the immigration court, rendering any subsequent deportation *ultra vires* and void.  (*Id.*).

This argument fails.  Neither *Pereira* nor 8 U.S.C. § 1229(a) control when and how subject matter jurisdiction over a removal proceeding vests in an immigration court.  Rather, separate federal regulations promulgated by the Attorney General dictate when and how an immigration court gains subject matter jurisdiction.[3]  Specifically, 8 C.F.R. § 1003.14(a) states that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service."  For all proceedings "initiated after April 1, 1997," a "charging document" is defined by a separate regulation to "include a Notice to Appear."  8 C.F.R. § 1003.13.  Yet another regulation—8 C.F.R. § 1003.15(b)-(c)—lists the specific items that must be included in a notice to appear filed with the immigration court for jurisdictional purposes.

---

[3]      Congress explicitly granted the Attorney General authority to "establish such regulations" as he "determines to be necessary for carrying out" the Immigration and Nationality Act.  8 U.S.C. § 1103(g)(2).  Pursuant to this statutory delegation, the Attorney General promulgated a comprehensive regulatory framework governing immigration court proceedings, including regulations concerning when and how subject matter jurisdiction over a removal proceeding vests in an immigration court.  *See generally* 8 C.F.R. § 1003.

Section 1003.15(b) lists seven items a notice to appear should contain, but the time and place of the removal proceedings is not among the listed criteria. Section 1003.15(c) lists five additional items that should be provided to the immigration court in a notice to appear, but, here again, the time and place of the removal proceedings is not among the listed criteria. Neither § 1003.15(b) nor § 1003.15(c) cross-reference 8 U.S.C. § 1229(a)(1).

By contrast to these regulations concerning the required content of notices to appear filed with the immigration court for jurisdictional purposes, *Pereira* and 8 U.S.C. § 1229(a)(1) concern the required content of notices to appear "given . . . to the alien" either in person, by mail, or by delivery to the alien's counsel.[4] Section 1229(a)(1)(A)-(G) lists ten items that must be specified in notices to appear given to the alien, including "[t]he time and place at which the proceedings will be held." 8 U.S.C. § 1229(a)(1)(G)(i). Neither § 1229(a)(1) nor *Pereira* address the immigration court's subject matter jurisdiction over the proceeding.

The Court finds that 8 C.F.R. § 1003.14 and § 1003.15—not 8 U.S.C. § 1229(a)(1) and *Pereira*'s interpretation of that statutory provision—control when and how subject matter

---

[4] At oral argument, defense counsel argued that because 8 C.F.R. § 1003.15 and 8 U.S.C. § 1229(a)(1) refer to the same notice to appear, the content requirements listed in § 1229(a)(1) and further clarified by *Pereira* must be read into the content requirements listed in § 1003.15. Counsel contended that any other reading of the statutory and regulatory scheme would be absurd. Counsel may be correct that the same notice to appear issued to the alien pursuant to § 1229(a)(1) is often, if not always, the same notice to appear filed with the immigration court for jurisdictional purposes pursuant to § 1003.14 and § 1003.15. But the conclusions counsel draws from this point are flawed in two respects. First, even if the statute and the regulations refer to the same notice to appear, it does not necessarily follow that the time and place criteria listed in § 1229(a)(1) for purposes of providing notice to the alien must be imported into § 1003.14 and § 1003.15, which serve the distinct purpose of establishing the immigration court's subject matter jurisdiction. Second, it is not at all absurd that, under the current statutory and regulatory scheme, the contents of the same notice to appear filed with the immigration court and provided to an alien could be sufficient for subject matter jurisdiction purposes under 8 C.F.R. § 1003 but deficient for notice purposes under *Pereira* and 8 U.S.C. § 1229(a)(1). These provisions serve different purposes, and the Court declines to read the two provisions as requiring identical criteria when *Pereira* does not so require and the two provisions are workable as written.

jurisdiction vests in an immigration court. Fourth Circuit precedent supports this conclusion. *See, e.g., Sorcia v. Holder*, 643 F.3d 117, 119 n.1 (4th Cir. 2011) (citing § 1003.14(a) for proposition that jurisdiction vests upon filing of notice to appear with the immigration court); *Shogunle v. Holder*, 336 F. App'x 322, 324–25 (4th Cir. 2009) (holding jurisdiction never vested in immigration court because no notice to appear had been filed with the court per § 1003.14(a)). At least one district court has reached the same conclusion in a post-*Pereira* decision. *See United States v. Romero-Colindres*, No. 1:18-cr-00415, 2018 WL 5084877, at *2 (N.D. Oh. Oct. 18, 2018) (noting that neither the "vesting provision [of 8 C.F.R. § 1003.14(a)] nor the definition of charging document under section 1003.13 expressly require that an NTA meet the statutory requirements of 8 U.S.C. § 1229(a)(1)").[5] Here, Ramirez makes no argument that the notice to appear filed with the immigration court is deficient under 8 C.F.R. § 1003.15. Accordingly, the Court declines to dismiss the indictment on jurisdictional grounds.

### B. Ramirez's Collateral Attack Under 8 U.S.C. § 1326(d)

Ramirez also advances a collateral attack on his deportation order pursuant to 8 U.S.C. § 1326(d), which permits an alien to "challenge the validity" of the deportation order underlying an illegal reentry prosecution if the alien can demonstrate that: "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the

---

[5] Ramirez asks the Court to follow two post-*Pereira* district court decisions invalidating indictments charging defendants with illegal reentry on subject matter jurisdiction grounds. *See, e.g., United States v. Zapata-Cortinas*, No. 18-cr-00343, 2018 WL 4770868 (W.D. Tex. Oct. 2, 2018) (dismissing indictment under *Pereira* where notice to appear lacked time and place details, reasoning that subject matter jurisdiction never vested because of deficient notice to appear); *United States v. Virgin-Ponce*, No. 2:18-cr-00092, 2018 WL 3655166 (E.D. Wash. July 26, 2018) (same). However, these holdings confuse the requirements for notices to appear filed with the immigration court for jurisdictional purposes under 8 C.F.R. § 1003 with the requirements for notices to appear provided to the alien under 8 U.S.C. § 1229(a)(1)—*Pereira* establishes that time and place details are required for the latter but 8 C.F.R. § 1003.15(b)-(c) do not require such details for the former.

deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." If an alien "satisfies all three requirements, the illegal reentry charge must be dismissed as a matter of law." *United States v. El Shami,* 434 F.3d 659, 663 (4th Cir. 2005).

Unlike in the subject matter jurisdiction inquiry addressed above, *Pereira* and the content requirements for notices to appear issued to aliens listed in 8 U.S.C. § 1229(a)(1) have bite in the § 1326(d) inquiry. The Government concedes, as it must, that the notice to appear issued to Ramirez failed to list the time, date, and place of the removal proceedings. (Dkt. 23 at 7). This defect renders this notice to appear deficient under *Pereira* and the plain text of § 1229(a)(1).[6] *See* 8 U.S.C. § 1229(a)(1)(G)(i) (specifying that notices to appear issued to aliens must include the "time and place at which the proceedings will be held"); *Pereira*, 138 S.Ct. at 2113–114 ("A putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear' under section 1229(a) . . ."). The only question, then, is whether this defect in the notice to appear, and its attendant practical consequences, are sufficient for Ramirez to challenge the deportation order issued against him under 8 U.S.C. § 1326(d). The Court concludes that Ramirez cannot successfully attack the validity of his deportation order under § 1326(d).

---

[6]    The Government attempts to cabin *Pereira* to its specific factual context, the stop-time rule of 8 U.S.C. § 1229b(d). (Dkt. 27 at 7–11). Although the *Pereira* majority indicated that the specific question presented in *Pereira* was "narrow," the majority held that because § 1229(a) employs "quintessential definitional language" in elucidating the required content of a notice to appear, "when the term 'notice to appear' is used elsewhere in the statutory section, *including as the trigger for the stop-time rule*, it carries with it the substantive time-and-place criteria required by § 1229(a)." *Pereira*, 138 S.Ct. at 2116 (emphasis added). Thus, *Pereira* makes clear that the stop-time rule of § 1229b(d) is just one application of its holding regarding the required contents of a notice to appear issued to an alien under § 1229(a). Accordingly, the Government's contention that "this case is outside the scope of *Pereira*'s limited holding" is without merit. (Dkt. 27 at 1).

With respect to the first two prongs of the § 1326(d) inquiry—exhaustion of administrative remedies and deprivation of judicial review—the Government argues that Ramirez cannot demonstrate exhaustion because he "waived his right to appeal his prior removal" at the time of the removal hearing. (Dkt. 23 at 15). In response, Ramirez incorporates arguments made in two recent illegal reentry cases. *See United States v. Saravia-Chavez*, No. 3:18-cr-00016; *United States v. Ramos-Delcid*, No. 3:18-cr-00020, 2018 WL 5833081 (W.D. Va. Nov. 7, 2018). There, the defendants argued they were not required to exhaust administrative remedies or seek judicial review because the immigration court lacked jurisdiction and thus the proceedings were void, and because it would have been futile to seek administrative or judicial remedies under a 2011 Board of Immigration Appeals (BIA) decision holding that a putative notice to appear has legal effect "regardless of whether the date and time of the hearing have been included in the document." *Matter of Camarillo*, 25 I. & N. Dec. 644, 651 (BIA 2011).

The Court rejected Ramirez's subject matter jurisdiction argument above. Furthermore, the copy of the deportation order Ramirez provided, (dkt. 18-1), indicates that Ramirez waived his right to appeal the order. Ramirez nowhere argues that this waiver was unknowing or involuntary. A knowing and voluntary waiver of the right to appeal a removal order generally constitutes a failure to exhaust administrative remedies. *United States v. Lopez*, 667 F. App'x 837, 838 (4th Cir. 2016) ("If . . . an alien knowingly and voluntarily waives his right to appeal an order of deportation, then his failure to exhaust administrative remedies will bar collateral attack on the order in a subsequent illegal reentry prosecution under § 1326(d)." (quoting *United States v. Cerna*, 603 F.3d 32, 38 (2d Cir. 2010))). Moreover, the Court notes that this is not a case where immigration officials' "failure to provide notice precluded [the defendant] from attending his deportation hearing in the first instance." *El Shami*, 434 F.3d at 664. In such cases, the

Fourth Circuit has held that a defendant is not genuinely "apprised of his right to seek . . . administrative and judicial review," and thus "satisfies the first two requirements for a collateral attack under § 1326(d)." *Id*. Here, Ramirez received notice of the time, date, and place of his removal hearing after receiving the defective initial notice to appear and appeared at the hearing. (Dkt. 23 at 3; Dkt. 23-1).

Nonetheless, the Court finds it unnecessary to affirmatively reach whether Ramirez is excused from showing exhaustion of administrative remedies and deprivation of judicial review because, even assuming that Ramirez satisfies these first two prongs, Ramirez cannot show that his deportation proceedings were fundamentally unfair. To demonstrate fundamental unfairness under § 1326(d), an alien must show that "(1) his due process rights were violated by defects in his underlying deportation proceeding; and (2) he suffered prejudice as a result of the defects." *El Shami*, 434 F.3d at 665. An alien's "fundamental" right of due process includes "the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 664–65 (quoting *United States v. Torres*, 383 F.3d 92 (3d Cir. 2004)). "[D]ue process requires an alien who faces [removal] be provided (1) notice of the charges against him, (2) a hearing before an executive or administrative tribunal, and (3) a fair opportunity to be heard." *Id*. at 665. To demonstrate prejudice, the alien must show that "but for the errors complained of, there was a reasonable probability that he would not have been deported." *Id*. *See also United States v. Lopez-Collazo*, 824 F.3d 453, 462 (4th Cir. 2016) (noting that "the defect in the removal proceedings" identified by the district court "must be linked" to the "resulting prejudice" for a district court to find fundamental unfairness).

The Court finds that immigration officials' failure to list the time, date, and place of Ramirez's deportation proceedings on the initial notice to appear, (dkt. 18-2), did not violate

Ramirez's due process rights. This is so because the defects in the initial notice to appear Ramirez received ultimately did not deprive Ramirez of "the opportunity to be heard at a meaningful time and in a meaningful manner." *El Shami*, 434 F.3d at 664–65. Despite the deficiencies in the initial notice to appear, Ramirez had "notice of the charges against him," received notice of the date, time, and place of his removal hearing, (dkt. 23-1), and attended that hearing, where he had a "fair opportunity to be heard" by the immigration judge. *El Shami*, 434 F.3d at 664–65. Accordingly, the deficiencies in the notice to appear Ramirez received ultimately do not rise to the level of a due process violation.

However, even assuming that these deficiencies violated Ramirez's due process rights, Ramirez cannot show that the alleged due process violation resulted in actual prejudice. Apart from the jurisdictional arguments this Court has already rejected, Ramirez presents no substantive argument that "but for the errors complained of, there was a reasonable probability that he would not have been deported." *El Shami*, 434 F.3d at 665. Accordingly, Ramirez has failed to make the necessary showing for a finding of fundamental unfairness, and the Court concludes that Ramirez is therefore precluded from collaterally attacking his deportation order under § 1326(d).

## IV. CONCLUSION

For the foregoing reasons, the Court denied Ramirez's motion to dismiss the indictment. (Dkt. 25).

The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order, (dkt. 25), to all counsel of record.

Entered this 16th day of November, 2018.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE